UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THIERRY NGOMA,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3949-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting his arrest and redetention on May 14, 2026, without first receiving notice and an opportunity to respond, violated his due process rights under the Fifth Amendment. (Dkt. # 1.) He provided a declaration in support. (Dkt. # 1-2 ("Ngoma Decl.").) He seeks release from custody, a return of his personal property, and injunctive relief related to any future redetention. (Dkt. # 1 at 17.) Respondents filed a return to the petition (dkt. # 5), together with supporting declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Matthew Smith (dkt. # 6 ("Smith Decl.")), and their

counsel Lawrence Van Daley (dkt. # 7 ("Van Daley Decl.")). Petitioner filed a traverse in reply. (Dkt. # 8.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth herein.[1]

## I. BACKGROUND

Petitioner is a citizen of the Democratic Republic of Congo, who was encountered by U.S. Border Patrol on August 25, 2024, and determined to have entered the United States without inspection. (Smith Decl., ¶ 3.) Petitioner was initially processed for expedited removal under 8 U.S.C. § 1225(b)(1) until U.S. Citizenship and Immigration Services ("USCIS") found he had a credible fear of returning to his native country. (*Id.* ¶¶ 4-8.) Thereafter, USCIS issued Petitioner with a Notice to Appear ("NTA") placing him into regular, non-expedited removal proceedings and charging him with being removable under the Immigration and Nationality Act ("INA"). (*Id.* ¶ 9; *see* Van Daley Decl., ¶ 2, Ex. 2.) On November 6, 2024, ICE paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). (Smith Decl., ¶ 10.) The "Interim Notice Authorizing Parole" authorized parole for a one-year period. (*See* Van Daley Decl., ¶ 2, Ex. 3.)

While released, Petitioner settled in the Cedar City, Utah area and lived with his nephew and brother-in-law. (Ngoma Decl., ¶ 4.) Petitioner asserts he attended his first ICE check-in on December 4, 2024, at which the officers "directed [him] to check [his] case status on the immigration court's online platform[.]" (*Id.* ¶ 5.) He thereafter monitored his case status online, which showed he was scheduled for a hearing on July 23, 2026. (*Id.* ¶ 7.) In February 2025, Petitioner received a work permit and social security card. (*Id.* ¶ 8.) He submitted an application

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

for asylum in June 2025. (*Id.*) Petitioner asserts he filed an application to renew his work authorization, but his attorney sent the application "to the wrong location" which led to its denial on February 5, 2026. (*Id.*; *see* Van Daley Decl., ¶ 2, Ex. 4 at 3.)

On May 14, 2026, ICE encountered Petitioner during a targeted enforcement operation in the Salt Lake City area. (Smith Decl., ¶ 11.) Officer Smith asserts that "ERO confirmed that Petitioner had been in the United States unlawfully and had been working in the United States with an expired Employment Authorization Document." (*Id.*) Contemporaneous DHS administrative records documenting Petitioner's arrest states that officers conducted "immigration checks" on Petitioner after they ran his license plate and "confirmed he was not in the United States legally." (Van Daley Decl., ¶ 2, Ex. 4 at 3.) Petitioner was arrested pursuant to a warrant for his arrest and transferred to the NWIPC on May 19, 2026. (Smith Decl., ¶¶ 11-12.)

On July 7, 2026, an immigration judge denied Petitioner's applications for relief from removal and ordered him removed to the Democratic Republic of Congo. (Smith Decl., ¶ 14; *see* Van Daley Decl., ¶ 2, Ex. 6 (removal order).) Petitioner filed an appeal of his removal order with the Board of Immigration Appeals ("BIA"), which remains pending. (Smith Decl., ¶ 14.)

While detained, Petitioner sought a bond hearing, which was held on September 21, 2026. (Smith Decl., ¶¶ 16-17.) At the hearing, an immigration judge found that the immigration court lacked jurisdiction. (Van Daley Decl., ¶ 2, Ex. 8 at 2.) The order has a box checked, which reads: "Mandatory Detention under *Matter of M-S* & *Matter of Q. Li*; 235(b)(1) and 235(b)(2)." (*Id.*, Ex. 8 at 2.) On the next page, there is an unchecked section which reads: "In the alternative, if the Court had jurisdiction, it would ***grant/deny*** bond in the amount of $____ based on the following[.]" (*Id.* at 3.) The "Danger/Flight Risk" box underneath that incomplete section *is*

checked, but there are no findings. (*Id.*) It is unclear whether Petitioner appealed the immigration judge's bond order.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his May 14, 2026 arrest and redetention as violative of his Fifth Amendment right to due process when assessed under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). (Dkt. # 1 at 7-13, 16.) In response, Respondents assert that Petitioner is mandatorily detained under § 1225(b)(1) because his parole automatically expired in 2025. (Dkt. # 5 at 2, 5-7.) Respondents further argue that Petitioner's redetention complied with federal regulation and due process. (*Id.* at 7-9.)

### A. *Mathews* and Procedural Due Process

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of

additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

*1. Private Interest*

Petitioner's interest in remaining free from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). This liberty interest exists even where, as here, release is conditional. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). A person previously released on parole under 8 U.S.C. § 1182(d)(5)(A) is deprived of that interest upon renewed detention. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Zavorin v. Wamsley*, 2026 WL 309733, at *3-4 (W.D. Wash. Feb. 5, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at *3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara*, 800 F. Supp. 3d at 1136. The first *Mathews* factor weighs in Petitioner's favor.

*2. Risk of Erroneous Deprivation and Value in Safeguards*

Respondents contend the risk of error was low because "[o]fficers confirmed a concrete violation, working with an expired Employment Authorization Document, before taking Petitioner into custody during a targeted enforcement action." (Dkt. # 5 at 7-8.) Respondents further assert that the subsequent immigration hearings "supplied a neutral decisionmaker and opportunity to be heard" and "confirm that the deprivation was not erroneous." (*Id.* at 8.)

The terms of Petitioner's parole, other than the purported expiration date, are neither in the record nor identified by Respondents, so it is not immediately clear that working with an expired work permit was a "concrete violation" that authorized Petitioner's redetention. As for

Petitioner's subsequent immigration hearings serving as a confirmation of low risk of erroneous deprivation, there is no evidence either of those hearings touched on the circumstances of his redetention. The July 7, 2026 hearing adjudicated Petitioner's applications for relief and led to an order of removal, while the immigration court declined jurisdiction at the September 21, 2026 bond hearing. These hearings were unrelated to the circumstances of Petitioner's redetention and thus could not have "confirm[ed] that the deprivation was not erroneous." (Dkt. # 7 at 8.)

Moreover, while Respondents assert in their return memorandum that Petitioner's parole automatically expired in 2025 and thereby allowed his redetention, there is no evidence Petitioner's expired parole motivated his 2026 arrest and redetention. Nor do Respondents explain why the immigration court scheduled Petitioner to attend an immigration hearing out of custody on a date after his parole expired. DHS's administrative records indicate ICE knew of Petitioner's upcoming July 2026 immigration hearing on the day he was arrested and redetained. (*See* Van Daley Decl., ¶ 2, Ex. 4 at 3 (documenting Petitioner's immigration history and noting that "[a]n immigration hearing is scheduled for July 23, 2026 at West Valley, UT.").) Yet, ICE nevertheless arrested Petitioner, decided he was to remain detained during the remainder of his proceedings, and changed the venue from Salt Lake City to Tacoma.

Pre-deprivation process would have provided Petitioner with an opportunity to challenge the basis for his redetention, clarify the terms and expiration of his parole, and offer evidence relevant to ICE's decision to keep him detained during the remainder of his removal proceedings. The Court finds this factor weighs in Petitioner's favor.

*3. The Governmental Interest*

Respondents assert the government has a "strong interest in returning an individual to custody . . . once the temporary exception of parole . . . has automatically expired[.]" (Dkt. # 5 at

8.) Respondents also assert additional process "after automatic expiration would impose administrative burdens without materially reducing the risk of error[.]" (*Id.*)

But ICE did not take any appreciable steps toward returning Petitioner to custody after his parole purportedly expired in November 2025. Instead, it scheduled him for an immigration hearing to take place in July 2026 and otherwise took no action until ICE encountered him during an operation in May of 2026. That alone calls into question whether his parole actually expired and also undermines any suggestion that Petitioner's return to custody was so exigent that redetaining him without process was warranted.

Civil immigration proceedings are assumed to be "nonpunitive in purpose and effect[,]" *Zadvydas*, 533 U.S. at 690, and the two regulatory purposes advanced by civil detention are the mitigation of risk of flight or danger to the community—neither of which are implicated on this record. *Id.* The Court does not find Respondents have identified an interest in redetaining Petitioner that could arguably justify forgoing pre-deprivation process.

In sum, the *Mathews* factors favor Petitioner and habeas relief is therefore warranted. Given Petitioner's liberty interest at stake, the high risk of erroneous deprivation, and the identified governmental interests, providing no pre-deprivation process was constitutionally deficient. Release is the appropriate and constitutionally required remedy. *See Aucatoma v. Hernandez*, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026) (and the cases cited therein).

**B. The September 21, 2026 Bond Hearing**

The Court briefly addresses the September 21, 2026 bond hearing, at which the IJ declined jurisdiction. Petitioner does not assign legal error to the immigration judge's bond decision in his petition but emphasize in his reply that Respondents "offer no meaningful argument for why a post-deprivation hearing may 'substitute for pre-deprivation notice and

hearing' in this particular case." (Dkt. # 8 at 11 n.3 (citing and quoting *Alvares Rivera v. Hernandez*, 2026 WL 1746139 (W.D. Wash. July 1, 2026)).)

Courts in this District generally find that release is the appropriate remedy for a constitutionally deficient redetention because any post-deprivation hearings "occur after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (underlining in original). That said, some courts nevertheless find that a lawful post-deprivation bond hearing can supply independent authority to detain, notwithstanding constitutional deficiencies from the earlier-in-time redetention. *See, e.g.*, *Singh v. Noem*, 2026 WL 482389, at *3 (W.D. Wash. Feb. 20, 2026). Here, however, the immigration court declined jurisdiction outright and the "alternative" flight risk and danger findings are incomplete and unclear. The Court therefore does not find the September 21, 2026 bond hearing supplies an independent, lawful basis for Petitioner's current detention or otherwise "cured" the unconstitutional May 14, 2026 redetention.

**C. Injunctive Relief**

Finally, Petitioner seeks permanent injunctive relief enjoining the government from redetaining him in the future without first providing notice and a hearing at which the government would be required to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no alternative conditions would mitigate those risks. (Dkt. # 1 at 17.) He also seeks an Order requiring Respondents to return any of his personal property in their possession other than his passport. (*Id.*)

While the Court has found Petitioner's redetention on May 14, 2026, did not comply with the Due Process Clause it does not necessarily follow that Petitioner continues to face a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). As for Petitioner's request for return of property, he does not develop a factual record to support his request and the Court has no independent reason to believe the NWIPC would unlawfully withhold Petitioner's property. Petitioner's request for permanent injunctive relief is denied.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents shall RELEASE Petitioner from immigration detention within **twenty-four (24) hours**, subject to his most recent pre-detention conditions of release.

(2) Respondents shall file a status report with the Court confirming Petitioner's release within **four (4) business days**.

(3) Petitioner's request for injunctive relief is DENIED.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are strongly encouraged to meet and confer prior to the filing of any motion.

Dated this 16th day of November, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge